RECEIVED

DEC 11 2019

CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

BROCK FREDIN,

    Plaintiff,

--against--

HALBERG CRIMINAL DEFENSE,
CHRISTINA ZAUHAR

    Defendants.

Case No. 19-W-3068 JRT | DTS

**COMPLAINT**
Jury Trial Demanded

---

Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se* hereby alleges the following against

Defendant Halberg Criminal Defense ("Halberg Defense" or "Halberg") and Christina Zauhar

("Attorney Zauhar" or "Zauhar"):

### NATURE OF THE CASE

1.   Halberg Criminal Defense and Attorney Christina Zauhar allowed Plaintiff Brock

Fredin to be wrongfully convicted of a crime he did not commit. During his false conviction,

Halberg withdrew on the eve of sentencing. As a result, Halberg allowed Plaintiff to be given the

most brutal sentence in the history of the State of Minnesota. He was (falsely) sentenced to an

executed year sentence at the Ramsey County Workhouse. On June 19, 2019 the Minnesota

Supreme Court voided the statute on First Amendment grounds. On September 3, 2019, Plaintiff's

conviction was reversed and vacated by the Ramsey County District Court.

2.   Plaintiff brings this action against Attorney Zauhar and Halberg Defense to recover

damages for malpractice/negligence, breach of contract, excessive legal fees, fraud, and intentional

misrepresentation, false imprisonment, intentional infliction of emotional distress, and negligent

SCANNED

DEC 11 2019
KDS
U.S. DISTRICT COURT ST. PAUL

infliction of emotional distress in connection with and related to the action *State of Minnesota v. Brock Fredin*, Case No. 62-CR-17-3156 ("Miller State Action"), *State of Minnesota v. Brock Fredin*, Case No. 62-CR-18-157 ("Middlecamp State Action") collectively ("State Actions"), *Miller v. Fredin Case No: 62-HR-CV-16-46, Miller v. Fredin Case No: 62-HR-CV-18-202, Schaefer v. Fredin Case No: 62-HR-CV-16-41, and Lindsey Middlecamp v. Brock Fredin*, Case No. 62-HR-CV-17-233 ("Middlecamp Action") collectively known as ("Actions") pending in Ramsey County. Attorney Zauhar and Halberg Defense represented Plaintiff continuously in connection with matters relating to the Action(s) from November 2017 to August 2018.

3.    In this process Halberg caused Plaintiff overwhelming harm, including being deprived of his dying mother, torture, false imprisonment, threats of physical violence, forced labor, solitary confinement, deprivation of basic necessities, ongoing assaults, exposure to brutal violence, forced witness to illicit drug use and drug overdoses, forced witness to indirect sexual assaults by jail staff, loss of Plaintiff's professional livelihood, and the depletion of Plaintiff's entire savings and income. To illustrate Hallberg's unbridled misconduct, when Plaintiff attempted to negotiate his fees back for Halberg Defense's malpractice and unethical conduct, Halberg refused to return one cent leaving him without any defense to a false year sentence. At the withdrawal hearing Plaintiff was physical assaulted by Ramsey County Sheriff's deputy, in search of his phone, Halberg turned a blind eye. Most importantly, though, Halberg's conduct has robbed Plaintiff of the successful continuance of his career during its most productive years by negligently allowing quasi criminal Harassment Restraining Order ("HRO") criminal convictions for allegedly speaking out against Attorney misconduct and standing idle while two (2) unlawful

fifty-year (50) HRO Orders issued due to the negligent malpractice of Halberg.[1]  As a result, Plaintiff seeks actual and punitive damages against Attorney Zauhar and Halberg Defense for its unlawful and wrongful conduct.

## JURISDICTION AND VENUE

4.     This Court has subject matter over Plaintiff's claims of malpractice/negligence, breach of contract, excessive legal fees, fraud, and intentional misrepresentation against Attorney Zauhar and Halberg Defense pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5.     Venue is proper in the United States District Court for Minnesota pursuant to 28 U.S.C. § 1391(B) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this Judicial District.

6.     The Court also has federal question jurisdiction under 28 U.S.C. § 1331.

7.     Venue is proper pursuant to 28 U.S.C. § 1332(b)(1) and (b)(2) because the events that gave rise to this action occurred in this Judicial District.

## THE PARTIES

8.     Plaintiff Brock Fredin is a resident and citizen of the State of Wisconsin.

9.     Upon information and belief, Defendant Halberg Defense is a law firm registered in the State of Minnesota with an address of 7900 Xerxes Ave, S Suite 7100, Bloomington, Minnesota.

---

[1] Halberg encouraged findings and failed to file motions to dismiss that led to unlawful Fifty (50) year HRO's over allegations of petty legitimate First Amendment protected criticism.

10.    Upon information and belief, Defendant Christina Zauhar is a resident of the State of Minnesota with a work address of 7900 Xerxes Ave, S Suite 7100, Bloomington, Minnesota.

## FACTUAL ALLEGATIONS
### Background

1.    In an effort to create tabloid coverage, a desperate Assistant Minneapolis City Attorney named Lindsey Middlecamp ("Middlecamp") began obsessively stalking Plaintiff and unlawfully leaking – using her public position - confidential Appellate decisions and posting obsessive Tweets on her personal anonymous revenge porn blog in an effort to reopen a previously declined police complaint over Plaintiff's harmless Match.com profile ("Miller Complaint"). In her efforts, she was able to publish Plaintiff's photo(s) and defamatory content to hundreds of thousands of people. Plaintiff exercised his free speech by criticizing her on his own Facebook - without tagging, messaging or otherwise notifying Middlecamp - in an effort to immediately prevent any further harm to Plaintiff's life and/or career. As a result of Middlecamp's meddling, Plaintiff was charged in the Miller State Action (*State v. Fredin*, Case No. 62-CR-17-3156) for the facially unconstitutional allegation that he possessed a harmless Match.com profile clicked and viewed by his ex-girlfriend. Between October 17, 2018 and June 12, 2019 Plaintiff was falsely imprisoned at the Ramsey County Workhouse in *the* Miller State Action. On June 19, 2019 the Minnesota Supreme Court voided the Minn. Stat. 609.749, subd. 2(6), the stalking-by-mail provision, and Minn. Stat. 609.795, subd. 1(3), the mail-harassment statute as unconstitutional under the First Amendment, holding that both statutes are facially overbroad. *See In Re A.J.B.*, Case No. A17-1161 (Minn. 2019) Based on Defendant Miller's actions in reporting Plaintiff's harmless Match.com profile, which she clicked on herself, he was charged under this statute. On

September 3, 2019 charges in the Miller State Action were reversed and vacated by the Ramsey County District Court.

11.     On April 28, 2017, Plaintiff's home in Wisconsin was illegally entered by a swat style raid led by the Saint Paul City Police.  Upon information and belief, the raid was done to delete any evidence of Middlecamp's Appellate decision leak and to illegally serve a HRO from Middlecamp for courageously and ethically speaking out against her misconduct.   As a consequence, all of Plaintiff's possessions were ransacked and illegally taken as punishment for invoking first amendment rights to speak against this misconduct.  During the raid, Plaintiff was served with two trumped up misdemeanor criminal charges for allegedly posting on his own Facebook in protest.[2] The criminal charges were categorically false and obtained to provide further collateral consequence to Plaintiff for daring to speak out against Judicial and Attorney misconduct.

12.     In May 2018, Plaintiff obtained sealed documents in a separate federal court action that informed Plaintiff that the raid and criminal charges were executed to procure evidence in two (2) civil cases *Schaefer v. Fredin Case No: 62-HR-CV-16-41 and Lindsey Middlecamp v. Brock Fredin*, Case No. 62-HR-CV-17-233.  In May 2018, Attorney Zauhar and Halberg Defense was notified by Plaintiff immediately of this evidence and the meaning thereof.  Instead, Halberg

---

[2] The Saint Paul Police fraudulently drummed up a Match.com profile visit undertaken by Plaintiff's ex-girlfriend in December 2015 and claimed this was an HRO violation despite this action being undertaken through no fault of his own for the collateral purposes of serving Middlecamp's HRO.  Indeed, Halberg failed to accurately depict or effectively explain the Match.com profile visit to a six (6) person jury comprised of free speech experts.  In furtherance, Halberg failed to explain the collateral purpose of the criminal charges by willfully and negligently filing motions in limine to deprive their ability to disclose this information effectively restraining their own legal effectiveness at the expense of losing the trial.

Defense did nothing, and sat on the evidence despite Plaintiff's extraordinary efforts and expense in obtaining the admission.

<u>Plaintiff's Retention of Zauhar and Halberg Defense</u>

13.    In November 2017, Plaintiff contacted Halberg Defense in an effort to resolve the matter quickly. Halberg agreed to represent Plaintiff in these Action(s) in exchange for an upfront retainer fee.

14.    On October 11, 2017 Halberg demanded a flat fee retainer totaling $7000 in the Miller State Action. The retainer was signed by both parties. The retainer was paid in full. (*See* Ex. A.)

15.    On February 7, 2018, Halberg demanded a flat fee retainer totaling $4000 in the Middlecamp State Action. The retainer was signed by both parties. The retainer was paid in full. (*See* Ex. B.)

16.    On July 27, 2018, Halberg sent an invoice demanding $5000 to pay unpaid civil fees. Upon information and belief, Plaintiff made a partial payment totaling a few hundred dollars.

17.    Moreover, shortly after Plaintiff was hooked by entering into the retainer agreement, Halberg requested to represent Plaintiff in civil actions. For instance, despite Plaintiff having substantial assets at the time and was earning a previous business gross revenue of over $180,000 per year as a software architect prior to his career being destroyed, Halberg demanded an additional $5,000 more to appear in the Miller, Schaefer, or Middlecamp civil Actions. (*See* Ex. C.) In other words, when Halberg saw that not only did Plaintiff have deep pockets, they sought to tie up and siphon every penny he had on

what should have been straightforward civil matters. Plaintiff reluctantly agreed because of his expectation that he would soon be able to regain employment.

18.    Halberg did nothing on the civil Actions for weeks. And, as explained more fully below, Halberg Defense breached their representations to Plaintiff and never filed timely motion(s) to dismiss in the Miller, Schaefer, and Middlecamp Actions or Middlecamp State Actions.

19.    As described below, Halberg would later swap out flat fee retainers in the State Criminal Actions to pay unpaid civil retainer fees. When Plaintiff was unable to pay the civil retainer fees, due to the destruction of his professional livelihood, Halberg unethically threatened they would withdrawal their representation in the State Criminal Actions and did in fact withdrawal their representation from the State Criminal Actions.

20.    Rather than simply filing a short motion to dismiss or vacate for the Miller, Schaefer, or Middlecamp Action on or during the appropriate timeline, Halberg instead chose to prolong the litigation by repeatedly returning to efforts to conduct hearings, encourage judicial findings, and other costly legal maneuvers that would drive up cost(s).

21.    In the time that Halberg represented Plaintiff in the Miller and Schaefer Action, Halberg Defense failed to advance Plaintiff's interests in any form or fashion. Rather, each action Halberg undertook undermined Plaintiff's position in the litigation, made it increasingly difficult and buried him further in debt and attorneys' fees. As explained below, it was apparent that rather than attempting to reach an efficient resolution of the Miller, Schaefer, or Middlecamp Action, it was Halberg's intention to keep Plaintiff in court for as long as possible, fan the flames of the parties' conflict and siphon the parties' financial resources. As a result of Halberg's negligence and dishonest conduct explained more fully below, Plaintiff terminated Halberg in the Miller, Schaefer, and Middlecamp Action in August 2018.

7

22.     Halberg left the Miller, Schaefer, and Middlecamp Action as well as the State Actions in absolute disarray for Plaintiff to the point where no reputable family or criminal defense lawyer would touch the case. Moreover, Halberg had siphoned nearly all of his assets so Plaintiff could not afford to hire a new attorney. Plaintiff was forced to proceed with the Miller, Schaefer, and Middlecamp Action largely *pro se*, which led to Plaintiff being mocked, tormented and disgraced by the Ramsey County Court and Judge Patrick C. Diamond.[3]

### Halberg's Legal Defense

23.     The crux of contention at the early stages of the Miller State Action was whether probable cause existed for misdemeanor charges for allegedly invoking first amendment rights by publishing a single public post or profile edit on Match.com where Plaintiff's ex-girlfriend was sending obsessive continuing emails to him  Despite their representations to the contrary at the time of their retention, Halberg never once took any action to petition the court for a First Amendment expert witness, or any other strategy to outwit the Courts refusal to hear First Amendment defense even despite Plaintiff and Halberg's prior agreement in the Ramsey County Court that one would commence. And, further, waited until the very last moment prior to trial by wrongly arguing the statute in an effort to drive up legal fees and lock in the retainer status.

24.     Rather than simply filing a short motion petitioning for a First or Fourth Amendment expert on the issue of illegal collection of evidence, or free speech rights with

---

[3] Plaintiff was mocked for attempting to file a Writ of Prohibition or Appeals based on Halberg's negligent conduct. Judge Patrick C. Diamond claimed this was "sham litigation" and valid for "sanction". In other words, Judge Diamond was attempting to insulate his fraudulent rulings by initially discrediting Plaintiff without any opposition or complaint whatsoever by Halberg.

8

reference to a Match.com profile edit, Halberg instead chose to prolong the litigation by repeatedly returning to the court every four-to-five weeks for inconsequential status hearings. Each time when the court and prosecutor would apparently deny or oppose the request, Halberg would stand idle while Plaintiff was subjected to a malicious and false tabloid media campaign that destroyed his professional livelihood - without doing anything - to enter into another short negotiation with all parties or communication to the court to prevent pre-trial publicity.

25.   Halberg's scheme was apparent, though.  Instead of addressing the contested issue – first amendment constitutionality of a public Match.com post and the fourth amendment illegal collection of evidence during the raid – in an abbreviated hearing that would have likely resolved the entire matter in its early stages, Halberg wished to prolong the Miller State Action by repeatedly returning to court in nearly off-the-record proceedings on a near monthly basis until the Miller State Action was ripe for an exponentially more expensive full contested trial.  This placed Plaintiff at a decisive disadvantage in the State and Miller, Schaefer, and Middlecamp Action(s) as it pertained to seeking time from salvaging his career as well as dramatically increased the cost of litigation and attorneys' fees to the benefit of Halberg Defense.

26.   As set forth above, in failing to request a hearing on-the-record or through motion Halberg Defense breached its duty of loyalty to Plaintiff and failed to exercise ordinary reasonable care and diligence in its representation of Plaintiff in the Miller State Action.  Had Halberg protected Plaintiff's interests in requesting a hearing or contesting the refusal of the Court to hear First Amendment defenses at the early stages of the litigation, it is more likely than not that Plaintiff would have prevailed in the Miller State Action, or, at the very least, have obtained quick resolution to the matter.  In fact, additionally, Halberg alarmingly failed to file a timely motion to

dismiss in the Schaefer Action for an easily winnable Jurisdiction and Venue challenge as no party to the matter lived or worked in Ramsey County.

27.     As a proximate cause of and but for Halberg's unlawful conduct, Plaintiff suffered considerable damages. During the period of Halberg's representation alone, Plaintiff suffered unnecessary and significant financial damages in the excessive cost of Halberg's extraordinary legal fees and numerous unnecessary expenses associated with the prolonging of the litigation.  Most importantly, Plaintiff suffered damages in the form of significant emotional distress from being unfairly vilified and having to undergo invasive and unnecessary legal proceedings without appropriate legal representation. Subsequent to Halberg's termination, Plaintiff suffered significant financial damages in the form of having to retain new counsel that expended substantial fees to try to repair the irreparable damage Halberg caused. Plaintiff also was forced to incur additional significant expenses as a result of Halberg's negligent and unlawful conduct in failing to request a dismissal in Miller and Schaefer matters, limine, or other legal errors at trial.  Moreover, as a result of Halberg negligent and unlawful conduct, Plaintiff had to undertake self-sufficient methods for obtaining the return of all his property at extreme financial and emotional expense as a result of Halberg negligent and unlawful conduct that caused Plaintiff financial and emotional damage.  All of these damages could have been avoided had Halberg exercised reasonable care and diligence by requesting a dismissal hearing at outset of the Miller, Schaefer, Middlecamp Action or properly contesting First and Fourth amendment issues in the State Action rather than prolonging the litigation to churn excessive legal fees and costs. Consequently, Plaintiff seeks actual and compensatory damages.

### Miller Civil Action

28.     On March 22, 2018 Plaintiff's ex-girlfriend, Grace Elizabeth Miller, petitioned for a new harassment restraining order. Ms. Miller's previous restraining order had expired on March 21, 2018. In order to drum up a fraudulent request for a fifty-year (50) HRO, Ms. Miller made categorically false statements. The allegations consisted of two petty Internet criticisms. Halberg failed to conduct discovery, depose Ms. Miller, or even take a screenshot of the alleged criticism. Even worse, Halberg failed to even file a timely motion to dismiss arguing First Amendment issues or the myriad of other legal abnormalities that have accompanied this set of cases including the pile-on scheme to coach orders from her friends to illicit tabloid coverage.

29.     In April 2018, Halberg failed to properly contest the fifty-year ("50") HRO hearing and negligently allowed Ms. Miller to embed a show cause action into the same hearing without giving Plaintiff and, most importantly, the Court any prior notice whatsoever. This tacitly allowed Ms. Miller to gain a fifty-year (50) order by allowing the Court to make findings of two (2) HRO violations based on petty Internet public criticism which provides the statutory requirement for issuing a fifty-year (50) Order.

30.     During this same hearing, however, Halberg made no mention or even attempted to advance the interests of their own client, Plaintiff, by informing the Court of Ms. Miller's malicious scheme and the tabloid coverage precluding Plaintiff from a role in the local economy. Halberg made no attempt to negotiate with Ms. Miller's legal representative, Karmen McQuitty, prior to the initiation of such action for the purposes of mediating or resolving the issues prior to the hearing.

31.     Even worse, Halberg failed to file a police report or even inform the Court that Ms. Miller had conducted witness tampering with Plaintiff by directing a deputy to contact Halberg before Halberg was retained for the civil action in an apparent effort to intimidate her

11

representation. Indeed, this was a clear effort to cause undue burden and prejudice to Plaintiff's representation in the Miller State Action.

<u>Schaefer Civil Action</u>

32. In January 2018, Catherine Schaefer petitioned Ramsey County Court for a show cause hearing. The initial hearing was heard by Judge Tony Atwal. Prior to the hearing, however, Halberg failed to advance Plaintiff's interests in anyway whatsoever, failed to file a timely motion to dismiss, or make any other arrangements to seek a positive resolution. Plaintiff spent excessive fees to fly up from Birmingham, Alabama in order to attend the hearing.

33. In yet another hearing, this time a do-over where Halberg had another chance to fix her previous errors, Halberg failed to advance Plaintiff's interests during an identical April 2018 hearing before Judge Diamond.

34. In May 2018, Halberg negligently allowed Catherine Schaefer's lawyer, Peter R. Mayer, to petition the Court for yet another show cause hearing. This time over publishing of Ms. Schaefer's false police reports on the Internet. Despite the police reports being public documents, did not list Ms. Schaefer's name, Halberg failed to successfully dismiss the hearing. In fact, Halberg agreed to findings which were used to issue the fifty-year (50) year ex parte HRO.

35. On June 25, 2018, Judge Diamond issued a final Order providing extensive findings based on Halberg's consent. The findings were false, destructive, and paved the way for issuance of an ex parte fifty-year (50) HRO.

36. On June 29, 2018, Halberg failed to file a motion to dismiss after the ex parte Order was issued. Instead, relying on Plaintiff to pick up the pieces of her failed legal representation.

37.     On June 29, 2018, Halberg received an email from Peter R. Mayer admitting the July 9, 2018 fifty-year (50) HRO hearing was an abuse of process when he stated "I look forward to hearing about your client's willingness to reach some kind of an agreement that dismisses his pending appeal and removes the need for the July 9 hearing." In other words, Peter R. Mayer admitted that he was using a fifty-year (50) HRO hearing on July 9, 2018 as an action to dismiss a pending appeal in the matter. Per usual, Halberg failed to inform the Court of or stop this malicious scheme.

<u>Miller State Action and Criminal Trial</u>

38.     On Monday July 16, 2018, the Miller State Action and criminal trial finally began after nearly fifteen (15) months of waiting. During the trial, the state called two witnesses, Grace Elizabeth Miller, and Saint Paul Police Sergeant David McCabe.

39.     As a proximate cause of Halberg's legal malpractice, the following is provided:[4]

- Failed to accurate explain to the Jury that the harmless Match.com profile was not a message and simply a social media profile and that it could not have been a threat.

- Allowed an arrest warrant to issue when the prosecutor claimed Ramsey County lost Plaintiff's booking information despite previously being "long-booked".

- As an issue of fact, Halberg failed to introduce evidence that the criminal investigation was closed in March 2016 and only reopened in January 2017 following tabloid coverage unlawfully leaked by a Minneapolis City Attorney Lindsey Middlecamp.

---

[4] Two (2) high profile female attorneys magically found themselves on the jury panel. Carey Bollinger, daughter of Columbia University president Lee C. Bollinger and St. Thomas law professor Theresa Collette. Upon information and belief, Ms. Bollinger is a First Amendment expert, Harvard/Columbia educated lawyer, and former second circuit law clerk. Even this esteemed jury could not ascertain fundamental First Amendment speech based on failed jury instructions.

- As an issue of fact, Halberg failed to introduce evidence that the April 28, 2017 raid was done to procure evidence in two (2) civil cases.

- As an issue of fact, Halberg failed to introduce evidence that the raid was done through the collateral and fraudulent use of criminal charges over a Petty Match.com profile edit or visit.

- Halberg failed to contest the Jury Instructions denying the ability to raise First Amendment defenses to the Match.com profile edit or visit.

- Halberg failed to introduce an expert witness on the issue of First Amendment defenses around the Match.com profile edit or visit.

- Halberg failed to introduce an expert witness on the issue of Fourth Amendment defenses around the unlawful swat raid.

- Halberg failed to subpoena Lindsey Middlecamp or Catherine Schaefer to testify regarding their malicious scheme to pile-on Orders during the Miller or Middlecamp State Actions.

- Halberg failed to accurate explain the Match.com push-notification to the jury and that it was a result of Grace Miller's affirmative actions to generate a message to herself.

- Halberg failed to file a post-verdict motion for mistrial based on irregular jury selection and other abnormalities related to the trial.

- Halberg failed to mention that the alleged victim, Grace Elizabeth Miller, Plaintiff's ex-girlfriend, continued her relentless communication even after the Match.com profile edit or visit.

- Halberg failed to mention that the alleged victim, Grace Elizabeth Miller, Plaintiff's ex-girlfriend, continued her relentless stalking campaign by coaching ex-parte communication from her girlfriend Catherine Schaefer.

- Halberg instead chose to file a motion in limine to prevent these issues from being raised effectively restraining her ability to tell the complete story to the six-person jury.

- Halberg failed to contest the timeline purported to be unwanted communication by the State, despite the timeline including many communications during the routine prior relationship.

- Halberg failed to notify the Court that the alleged victim, Grace Elizabeth Miller, had conducted even further ex parte communication to witness tamper in violation of the law.

- Halberg failed to notify the Court of witness tampering by Lindsey Middlecamp. Lindsey Middlecamp had terrorized Plaintiff's family at the Twin Cities Grill within the Mall of America in Bloomington, Minnesota in March 2018 by calling the police on Plaintiff's family including two young children who were inadvertently eating on a Saturday night unbeknownst that Lindsey Middlecamp was also present to gain advantage in the Miller State Action and Middlecamp State Action.

- Halberg failed to notify the court or preclude pre-trial publicity, including direct, and ongoing threats directly originating from Lindsey Middlecamp, Grace Miller, and Catherine Schaefer.

- Halberg failed to contest verbal gag orders issued by Judge Sophia Vuelo or even defend their client against the increasingly hostile acts by Judge Vuelo used to intimidate Plaintiff.

15

<u>Middlecamp State Action</u>

40.     As a proximate cause of Halberg's legal malpractice, Halberg failed to seek a dismissal in the Middlecamp State Action.  Despite having multiple witnesses contesting the state allegations, Halberg failed to communicate with the City Attorney's Office. Furthermore, Halberg failed to properly contest a Spriegl motion seeking the state's ability to enter "prior-bad acts" as evidence.

41.     On October 28, 2019, a freedom of information act ("FOIA") production was released by the Minneapolis City Attorney's Office indicating that Ms. Middlecamp launched the bogus criminal affairs against Plaintiff.  If Halberg had properly subpoenaed this information previously, this entire charade would have been totally avoided.  Instead, Plaintiff was subjected to the above described misconduct.

<u>Halberg's Motion to Withdraw and Negligent Attempt<br>To Take All Retainer Fee(s)</u>

42.     As mentioned above, Halberg appeared before the court on Plaintiff's behalf eleven times in nine months to request the unsuccessful dismissal of State, Miller, Schaefer, or Middlecamp Actions between – November 2017 and August 30, 2018 -  in increasing efforts to prolong litigation.  As a result, Plaintiff was burdened with excessive legal fees and exhaustive unnecessary proceedings that were easily avoidable using appropriate motion practice.  After embarrassingly losing the Miller State Action by failing to properly argue first amendment constitutionality or successfully obtaining wins or even successful resolutions in any hearing or Action whatsoever, Halberg filed a motion to withdraw on August 20, 2018 out of the blue without any advanced notice.[5]  In the

---

[5] Halberg had the advantage and backing of famed UCLA law professor Eugene Volokh to dismiss the *Miller State Action* and *Middlecamp Action* on First Amendment grounds.  *See* https://reason.com/volokh/2018/05/08/minnesota-court-apparently-orders-man-no.   Instead, Halberg decided to ignore this evidence in all matters.

16

wreckage Halberg created, Plaintiff was left with two fifty-year (50) HRO Orders issued without any substantive legal basis and was forced to file a Writ of Prohibition along with several appeals on his own or face the possibility of being entangled in the state court system for a period up to Fifty (50) years, long past his expected life span.

43.     Following the verdict[6], based on Halberg's negligent performance, which Halberg has failed to take responsibility, which was later corrected by the Minnesota Supreme Court, and where charges were reversed and vacated, Plaintiff informed Halberg of his extreme efforts to obtain employment by forwarding several job denial emails.  Instead, without any sympathy, Halberg had previously claimed it was "easy" to obtain a job even though Plaintiff was subject to false extreme tabloid coverage that google bombed his Internet search, career, and faced petty pending charges that Halberg has failed to adequately represent.  At this stage, however, Halberg decided to withdraw from the representation knowing that Plaintiff was unable to immediately pay civil fees.  In other words, Halberg swapped out a criminal retainer agreement to pay unpaid civil fees.

44.     On August 16, 2018 Halberg sent an email admitting that they would commit fraud by exchanging a paid retainer in the Middlecamp State Action to cover unpaid civil fees – cases they lost and failed to advance Plaintiff's interest in any way whatsoever – by attempting to deceive Plaintiff.  In the email, Halberg claimed that she would "forgive" the unpaid civil fees.  As a gesture of good will, Halberg alleged, they would then accompany Plaintiff to the Miller State Action

---

[6] Plaintiff was admittedly frustrated and did not timely respond to Attorney Zauhar's email checking to see how he was doing.  He later briefly responded with respectful frustration that she lost at trial which Plaintiff believes annoyed Attorney Zauhar and caused the withdrawal.  Attorney Zauhar is a skilled lawyer nonetheless and a good speaker, leader, and talented at keeping facts simple.  She has a bright career and often exercises empathy by taking difficult cases with strongly condemned individuals.

Sentencing hearing. A hearing in which they were already contractually obligated to attend. In other words, Halberg was threatening to withhold representation that was not only completely paid, but that was contractually obligated.

45.    On August 16, 2018 Plaintiff declined the offer to withdraw and instead reiterated that he intended to pay the unpaid civil fees – despite Halberg embarrassingly losing each hearing – and that he was still vigorously seeking employment.

46.    In order to deceive Plaintiff and bait his response for purposes of negligently withdrawing from representation, Halberg conspired with law partners David Risk to schedule a conference call on August 17, 2018 without consulting or noticing Plaintiff. Plaintiff inadvertently called and was placed on a twenty (20) minute wait while Halberg Defense bumbled around and hatched an organized scheme to bait a response for purposes of negligently withdrawing from representation.

47.    During this call, Attorney David Risk immediately threatened Plaintiff with criminal incarceration by alleging that he would violate attorney-client privilege and disclose confidential communications to the Ramsey County Court for purposes to intimidate Plaintiff into agreeing to allow Halberg Defense into withdrawing and taking all unearned criminal retainer fees in what appears to be a fraudulent scheme to replenish unpaid civil fees. Plaintiff notified Attorney David Risk that this was indeed a threat and fraud that he would not be intimidated by this petty and false legal tactic. Attorney David Risk shot back that Plaintiff's pointing out that this was indeed a threat was somehow a threat to the Halberg Firm. In Attorney David Risk's magical worldview pointing out misconduct by him is somehow a threat to the firm. Indeed, the call was recorded to provide evidence of Attorney David Risk's threat to violate Attorney-Client and fraud to

steal a criminal retainer to replenish unpaid civil fees. Indeed, Halberg cowardly allowed this situation to unfold based on their willful refusal to communicate during the call and character assassinate Plaintiff to its partners.

48.     Knowing that Halberg, Attorney Risk, and Halberg Defense committed attorney misconduct, Halberg Defense sought an advisory opinion from the Minnesota Professional Responsibility Board on or after August 17, 2018. It goes without saying Halberg Defense would not have sought an advisory opinion without acknowledging their wrongful actions.

49.     In the motion to withdraw, Halberg made the following false statements of fact and testimony before the court in efforts to **conceal** their true motive(s):

> "irreconcilable breakdown in the attorney-client relationship and have been unable to effectively communicate…".

50.     In the weeks prior to the motion to withdraw, Halberg asked Plaintiff for more money to represent him in the Miller, Schaefer, and Middlecamp Action. In fact, during a July 2018 in-person meeting, Halberg asked for $5,000 to represent him in the Middlecamp Action even after initially being paid $1,000 for a brief avoidable court appearance that Halberg negligently failed to oppose. Halberg was tacitly using a threat of withdraw in the State Action as a way to gain additional monies in the Miller, Schaefer, and Middlecamp Action.

51.     Similarly, in June 2018, Halberg's purported statements prior to requesting more money were that she could "dismiss" as it relates to a June 25, 2018 Schaefer Action. Upon receiving Halberg's purported statement, Plaintiff was immediately led to believe that Halberg was withholding their legal representation to leverage higher fee(s) even though Halberg was paid nearly $13,000 to represent Plaintiff in the State Action. After Plaintiff refused this demand, Halberg attempted to file a motion to withdraw from the Middlecamp Action.

19

52.    Additionally, on August 20, 2018, when Halberg filed a motion to withdraw from the State Actions, it followed a prior request for additional money in the Miller, Schaefer, and Middlecamp Action.

53.    Upon receipt of the motion, Plaintiff noted a deadline for his own opposition papers on August 25, 2018.  Plaintiff attempted to communicate with Halberg Defense by sending a letter by email requesting that Halberg Defense cease its malicious actions.  After Attorney David Risk sent another antagonistic letter by email, Plaintiff noticed that Halberg had attempted to schedule a withdraw hearing without consulting with Plaintiff.  And, again, this seems to be a pattern of misconduct, as she also threatened to from the Middlecamp State Action immediately prior to trial after being paid a retainer.

54.    Even after being confronted, Halberg unfortunately continued their misconduct by attempting ghost communication to the court through an email message to lauren.durand@courts.state.mn.us - without copying or notifying Plaintiff - on or before Monday August 20 in a desperate effort to move the motion to withdraw hearing forward to deprive their client the ability to properly oppose and/or address the motion to withdraw.

55.    The record here conclusively demonstrates that Halberg breached contract and attempted to withdraw immediately prior to trial in efforts to unlawfully take all paid legal fee(s) while leaving their client unprotected and without legal representation going into a very serious criminal trial and sentencing hearing.

56.    Halberg did not disclose the request to move the hearing forward to Plaintiff and/or the prosecutor until the very last moment.  In effect, Halberg emailed Plaintiff the following week, at the very last moment, in a scam tactic to block Plaintiff's knowledge of

Halberg's improper actions. Halberg feigned ignorance, both to the court and Mr. Christie, to circumvent Plaintiff's ability to file an opposition to his motion to withdraw.

57.     Upon receipt of the email, Plaintiff immediately took emergency action to cease the improper activity by taking unprecedented extraordinary measures to email the court, prosecutor, and all parties therein to prevent Halberg from malpractice:

> I am in receipt of Halberg Defense attempt to schedule the Motion to Withdraw hearing. Unfortunately, I was not contemporaneously copied on any of this communication and am not available on Thursday.
>
> I note that Halberg Defense emailed or communicated with the Court seeking to schedule the hearing date on the motion to 10:30AM on August 23, 2018 without consulting or noticing me. This was a blatant attempt by Halberg Defense to attempt to thwart my ability to oppose the motion as my opposition papers are currently due on September 3.
>
> I instructed Halberg Defense to immediately cease communicating with the Court and/or Steve Christie concerning the pending motion to withdraw without copying me contemporaneously in such communication. Please disregard any of their requests unless it's clear that I'm also copied.
>
> Thank you for your consideration.

58.     Halberg Defense was so infuriated that upon receipt of this email contesting their unlawful attempt to move the hearing up to circumvent Plaintiff's ability to file a response, that they took to generating emails to mock and undermine Plaintiff by sending an email to the Court – alleging that Plaintiff was lying about his availability - merely out of pure anger after being exposed to the Court for their improper conduct.

59.     Unfortunately, Halberg's misconduct did not cease with the motion to withdraw. Even after being confronted with their misconduct, she continued by emailing the court to move the hearing date to known conflict for Plaintiff no doubt in an effort to keep Plaintiff absent from the hearing. And, again, this was after Halberg was asked to cease communicating with the Court with reference to a hearing date. As a retaliatory tactic, Halberg later claimed she had to "verify"

21

the hearing date implying that Plaintiff was somehow lying about his earlier availability. Later, Halberg ceased copying Plaintiff on the email and simply scheduled the hearing without Plaintiff's consent or knowledge. In effect, Halberg blatant attempt was to prevent Plaintiff from gaining competent defense regarding this proceeding and to further defame his character.

60.     On August 24, 2018, the motion to withdraw hearing was heard by the Court. Halberg Defense attempted to have a private conversation in-chambers without Plaintiff's presence to expedite the withdraw. Upon witnessing this maneuver, Plaintiff informed the Court this was unacceptable and Halberg attempted a private tabled bench discussion without Plaintiff's presence.

61.     Illustrative of Halberg's negligent legal defense, prior to the August 4, 2018 hearing, Judge Sophia Y. Vuelo attempted to assault Plaintiff once again with her bailiff and several other deputies. As what has become custom, Judge Vuelo orders her deputies to search Plaintiff and any of his parties including his elderly mother. This time, however, the deputies cornered Plaintiff, threw him against a wall, grabbing hold of him, and humiliatingly searched him while repeatedly demeaning him in front of the entire courtroom audience packed around him within feet of the courtroom door. Halberg and Halberg defense failed yet again to defend their client.

62.     On August 24, 2018, Plaintiff contested the motion to withdrawal by filing an opposition motion and speaking in opposition to both his own attorneys and the prosecutor. If the prosecutor, Assistant Saint Paul City Attorney Stephen Christie, had any integrity whatsoever, he would have objected to the withdrawal on the basis of fairness and Due Process. To illustrate Halberg's overwhelming legal malpractice, after Plaintiff's

conviction was reversed and vacated, it is believed and alleged Mr. Christie was removed from ever prosecuting another criminal case. Indeed, Halberg's malpractice not only inflicts harm on Plaintiff, it caused severe career disability to an experienced legacy prosecutor. Moreover, Halberg's legal malpractice is still causing waves where those involved in the misconduct are having their careers impacted including Ramsey County probation officer Michael Head who colluded with Mr. Christie to write a bogus presentence investigation recommending the brutal illegal sentence over facially unconstitutional allegations described above.

63.     On August 24, 2018, despite no other motions or other orders being granted in Plaintiff's favor in Ramsey County District Court over the course of nearly four (4) years and upwards of fifty (50) hearings, the Court eagerly granted Halberg's motion to withdrawal. This was Illustrative of the Ramsey County District Court's prejudice where any party even remotely adverse to Plaintiff's interest was granted favorable footing.

64.     As a proximate cause of and but for Halberg's conduct in failing to secure appropriate dismissals, failing to vigorously defend at trial, and withdrawing by fraudulently stealing and swapping retainers, Plaintiff suffered significant financial damages. These damages include the continued loss of Plaintiff's career as a software architect and income. Plaintiff attempted to mitigate the damages by accepting a lower level positions at fund Halberg unsuccessful legal activities. However, these positions are of substantially less prestige and caliber as Plaintiff's previous roles. Plaintiff also suffered a significant pay cut in these roles. Had Halberg exercised reasonable care and diligence by seeking and agreeing to filing appropriate motions to dismiss unlawful legal Action(s) and prevented conflicts to Plaintiff's normal work schedule, Plaintiff would not have lost his more prestigious role.

<u>October 17, 2018 Sentencing</u>

65.     As described above, Halberg withdrew from representation on August 24, 2018.   Attorney Zauhar bailed on Plaintiff at his most vulnerable moment.   This is something that can never be forgiven.   Attorney Zauhar left Plaintiff penniless, nearly homeless, without any legal representation, deprived of his dying mother, and negligently forced him through her legal malpractice to be falsely imprisonment for a year.   They did not contact the Saint Paul City Public Defenders office to arrange for alternate representation nor did they make any agreement to repay their retainer which could have allowed Plaintiff the opportunity to defend himself.

66.     Plaintiff was forced to file an appeal to stay the case until such point that he could find proper legal representation.   As expected, the Court denied the motion, and Plaintiff filed an emergency stay appeal in the Court of Appeals.   On September 5, 2018 The Appellate Court granted the stay infuriating Judge Sophia Y. Vuelo.

67.     On September 17, 2018 as a proximate cause of Halberg's negligent legal malpractice, Judge Sophia Y. Vuelo infringed on Plaintiff's due process rights by throwing him in contempt for having a stay motion asserted against her by the Appellate Court. Plaintiff was forced witness to the Ramsey County Sheriff's department intervention where the witnessing Sheriff deputy vehemently refused to obey her illegal contempt order. Instead, the courageous deputy (visibly shaking out of fear for his own career) respectfully took Plaintiff into a side hallway and called the most senior deputy on duty who had to negotiate with Judge Sophia Y. Vuelo for Plaintiff's release and instructing her of the illegal nature of her order.   Indeed, Judge Vuelo was foreshadowing her brutality and draconian sentence.

68.    On October 17, 2018, Plaintiff was forced to attend a sentencing hearing in the Miller State Action for facially unconstitutional allegations described above.   Plaintiff had been eereliy assigned a public defender only a few days prior to the hearing named Bruce Wenger. Mr. Wenger who had never presided over a misdemeanor case, was Judge Sophia Vuelo's former supervisor in the public defender's office and was the most senior public defender in Ramsey County.  As a proximate cause of Halberg's legal malpractice, given the short notice, Mr. Wenger failed to file a written opposition memorandum to the absurd sentencing recommendation or inform the Court of the fact his mother was near death and he was her only caregiver.  Moreover, Plaintiff had no criminal history and the facially unconstitutional allegation consisted of a non-violent harmless Match.com profile viewed by his ex-girlfriend.

69.    In an unprecedented move, Plaintiff was given what can only be described as the most brutal sentence in the history of the State of Minnesota.  He was given an executed year sentence at the Ramsey County Workhouse.   Plaintiff's draconian sentence was the result of Halberg's legal malpractice.  The public defender, Bruce Wegner, that it was the worst sentence he had seen in his entire thirty (30) year career where he worked as both an Assistant United States Attorney for the District of New Mexico prosecuting felonies and a Ramsey County public defender defending felonies.

70.    During this sentence, Plaintiff was exposed to extreme violence the likes he had never even fathomed.  Indeed, he was forced to watch countless ruthless fights where men callously broke other inmates' teeth, jaws, noses, eye sockets and cheek bones.  These fights left blood forever stained into the walls and carpet. Many times, blood had to be mopped up from the coated flooring.   On other occasions, he was forced to watch inmates' overdose on methamphetamine, nearly die, and be taken away in stretchers.  Furthermore, he was forced to be

housed with seriously deranged and mentally ill inmates who would constantly threaten violence against him if he did not purchase them commissary items. Specifically, word spread fast as inmates would peer over Plaintiff's shoulder when he used the kiosk to determine that Plaintiff always had large sums of money in his commissary account. Plaintiff became the target of extortion schemes. Some of the extortion schemes targeted Plaintiff because he won every poker tournament and never lost often times winning fifty (50) or one hundred (100) ramen noodles in one sitting. At one point, a disgruntled inmate violently threw chairs at him, smashed a television, and glass window because he refused to give him items of his breakfast plate after beating him in card games. And, again, these were experiences he was never prepared for nor ever witnessed. To illustrate the absurdity of the sentence and Halberg's legal malpractice, Plaintiff was housed with several self-admitted murderers and other violent criminals who had been given lighter sentences and were even let out on work release. Some of whom even "escaped" and never came back until being apprehended later on. Moreover, Plaintiff was forced to be an indirect witness to sexual assaults by jail staff on violent six (6) time felons. Staff worker Robyn Bata was having an affair with six-time felon Ricardo Curtis. The pair engaged in what could have normally been described as a consensual involvement, however, Mr. Curtis could not consent due to his status, and the fact Ms. Bata was using facility resources to engage in the affair. Furthermore, Plaintiff was further tortured through denial of work release or access to the outside world.

71.     Similarly, Plaintiff was deprived of access to basic necessities, soap, toothpaste, deodorizer, clothing, food, juice, privacy and blankets. Plaintiff was also deliberately deprived of access to a law library. Plaintiff was accused of ghostwriting

pleadings for other inmates. A number of inmates requested that Plaintiff write letters to Ramsey County Judges and//or write motions on their behalf. These inmates would attempt to pay him in ramen noodles. As a result, Plaintiff was criticized by jail staff for coaching other inmates and often subject to harsh retaliation including being tortured through solitary confinement where his inventory of ramen noodles (the facilities currency), legal files, and books were appropriated without his consent.

72. During this false imprisonment, given Halberg's legal malpractice, Plaintiff was forced to labor without pay while he could have been paying his mother's medical bills in his routine professional career. He was housed with economically and intellectually disadvantaged inmates, many of which lacked basic high school educations. To illustrate Halberg's legal malpractice and the absurd sentence, out of four or five hundred inmates he met or was exposed to, only four (4) had a known bachelor's degree, and only one (1) other inmate had a graduate degree. These inmates had (actual) violent convictions and were given lighter sentences. Plaintiff's (false) conviction was not only given a more harsh sentence but in all the time he spent, he never once met anyone else there for a "social media" First Amendment based "crime".

73. Most egregious of all, Plaintiff was deprived access of his dying mother. Given Halberg's legal malpractice, he was unable to be physically present with his mother while she died. Judge Sophia Y. Vuelo and the Ramsey County Workhouse staff worker Jim Goneau accused Plaintiff of lying about his mother's health "in order to get out of jail." On May 18, 2019, Plaintiff was forced to listen to his mother die over the phone He listened as she gargled and said things in her waning moments like "where is Brockie?" Words and sounds that Plaintiff will never forget and are etched into his mind forever. While he was on the phone, Plaintiff was egregiously threatened with solitary confinement for using the phone past a time limit.

27

74. As a result, Plaintiff has been unable to function, become numb to the world, and will never be the same. Halberg's legal malpractice and self-engorgement has cost Plaintiff dearly and more than any financial reparation would ever cure.

## COUNT 1
## (LEGAL MALPRACTICE/NEGLIGENCE)
### (Attorney Zauhar and Halberg Defense)

75. Plaintiff re-alleges and incorporates by reference paragraphs 1–74 of this Complaint as though fully set forth herein.

76. As legal counsel for Plaintiff, Halberg owed Plaintiff duties of professional care, loyalty, diligence and skill.

77. By engaging in the conduct set forth above, Halberg failed to exercise ordinary reasonable care and diligence used under the same or similar circumstances by attorneys and thereby breached those duties of professional care owed to Plaintiff, which included but are not limited to:

(a) Failing to petition the court for First and Fourth Amendment expert witness at the outset of the Miller and Middlecamp State Action, which was requested by Plaintiff;

(b) Failing to cite the that criminal charges were declined in March 2016 but only reopened after unlawful leaking by the City Attorney's Office to advance their own case;

(c) Failing to include evidence of an unlawful swat raid and frivolous criminal charges that were used as the legal basis to collaterally serve Ms. Middlecamp's HRO;

(d) Failing to petition the court for a motion to dismiss hearing on dismissing the Schaefer Fifty-Year (50) HRO at the outset of the Schaefer Action, which was requested by Plaintiff;

28

(e)   Failing to petition the court for a motion to dismiss hearing on dismissing the Miller Fifty-Year (50) HRO at the outset of the Miller Action, which was requested by Plaintiff;

(f)   Failing to petition the court for a motion to vacate the Middlecamp two-year (2) HRO – despite having the backing of Eugene Volokh who remains a leading First Amendment expert – by way of a March 2018 article on reason.com.

(g)   Failing to petition the prosecutor for a dismissal of frivolous legal charges at the outset of the State Action, which was requested by Plaintiff;

(h)   Engaging exclusively in off-the-record proceedings with the court;

(i)   Engaging exclusively in off-the-record proceedings with the prosecutor;

(j)   Failing to consult or advise Plaintiff on a proposed forensic investigator or evaluators prior to making a submission to opposing counsel and the court;

(k)   Agreeing to – many times without Plaintiff's consent – hearing schedules that conflicted with Plaintiff's work schedule that resulted in Plaintiff's forced resignation from software development positions;

(l)   Failing to consult or advise Plaintiff on a proposed forensic investigator or evaluators prior to making a submission to opposing counsel and the court;

(m)   Filing motions to withdraw in the Middlecamp State Action immediately prior to trial in efforts to prejudice Plaintiff;

(n)   Filing motions to withdraw in the Miller State Action immediately prior to a sentencing hearing in efforts to prejudice Plaintiff;

(o)   Ghost communication with the court in secret efforts to move hearing dates forward to circumvent Plaintiff's ability to file oppositions;

(p)     Continued communication with the Court regarding a motion to withdraw hearing despite being told to cease;

(q)     Legal threats following efforts to withdraw by Attorney Zauhar;

(r)     Falsely making statements of fact to the court and providing false testimony to conceal unlawful ex-parte communication with the prosecutor and maintain exclusive business interest with the Saint Paul City Attorney's office;

(s)     Failing to take any action whatsoever to prevent pre-trial publicity or inform the court of Plaintiff's adversaries' vicious scheme to coach pile-on Orders;

78.     As legal counsel for Plaintiff, Halberg allowed Plaintiff to be falsely imprisoned for a year.

79.     As a direct and proximate result of Halberg's negligence and failure to exercise reasonable diligence and care in their representation of Plaintiff in the Miller, Schaefer Middlecamp and State Actions, Plaintiff has suffered injury and damages as set forth more fully above in an amount to be determined at trial.

## COUNT 2
### (Breach of Contract)
### (Attorney Zauhar and Halberg Defense)

80.     Plaintiff re-alleges and incorporates by reference paragraphs 1–79 of this Complaint as though fully set forth herein.

81.     Through the conduct alleged in this Complaint, Halberg materially breached its express and implied contractual obligations to Plaintiff that it would take all action legally necessary and appropriate to protect Plaintiff's interests in the Miller, Schaefer, Middlecamp and State Action(s); that it would perform all legal services with due care and diligence; and that it would provide Plaintiff with professional, skilled and careful lawyers to handle the Middlecamp and State Action(s).

82.     As a direct and proximate result of Halberg's material breach of contract, Plaintiff has suffered injury and damages as set forth more fully above in an amount to be determined at trial.

## COUNT 3
### (Excessive and Wasteful Billing)
### (Attorney Zauhar and Halberg Defense)

83.     Plaintiff re-alleges and incorporates by reference paragraphs 1–82 of this Complaint as though fully set forth herein.

84.     An attorney must charge a client fair and reasonable fees and is held to the highest standards when dealing with clients in connection with matters involving legal fees.

85.     Halberg breached its duties to Plaintiff by performing legal services that were unnecessary, inappropriate, wasteful, unlawful and which did not protect or advance Plaintiff's interests, or legal and factual arguments in the Middlecamp and State Action.

86.     Halberg further breached it duties to Plaintiff by charging excessive, unnecessary and fraudulent fees and overcharging Plaintiff with respect to services performed in connection with, or related to, the State Action.

87.     Halberg attempted to fraudulently seize a paid retainer in the Middlecamp State Action to pay for civil fees.

88.     As a direct and proximate result of Halberg unnecessary, excessive, unlawful fees and overcharges, Plaintiff has suffered damages as set forth more fully above in an amount to be determined at trial.

## COUNT 4
### (Intentional and Negligent Representation)
### (Attorney Zauhar and Halberg Defense)

89.     Plaintiff re-alleges and incorporates by reference paragraphs 1–88 of this Complaint as though fully set forth herein.

90.    Halberg actions and representations to Plaintiff described above were made intentionally, recklessly and negligently. In performing these actions and representations, Zauhar acted with oppression, fraud and malice.

91.    Halberg actions and representations to Plaintiff described above were material to Plaintiff's case in the State Action.

92.    The representations described above were reasonably relied on by Plaintiff in retaining Halberg, paying Zauhar and other acts performed by Plaintiff in reliance thereon.

93.    Said reliance by Plaintiff actually and proximately caused Plaintiff damages as set forth more fully above in an amount to be determined at trial.

## COUNT 5
### (Fraud)
### (Attorney Zauhar and Halberg Defense)

94.    Plaintiff re-alleges and incorporates by reference paragraphs 1–93 of this Complaint as though fully set forth herein.

95.    Halberg made materially false statements of fact to Plaintiff alleging that fees and a retainer paid for the Middlecamp State Action were to be used for the entirely of this Action.

96.    Halberg later made material statements alleging that she would use the Middlecamp State Action retainer to replenish unpaid civil fees.

97.    Halberg tried to deceive Plaintiff by alleging that she would forgive unpaid civil filing fees in exchange for withdrawing from representation effectively exiting the Middlecamp State Action and coercing the retainer as payment for unpaid civil fees.

98. Halberg actions and representations to Plaintiff described above were made intentionally, recklessly and negligently. In performing these actions and representations, Zauhar acted with oppression, fraud and malice.

99. Halberg actions and representations to Plaintiff described above were material to Plaintiff's case in the State Actions.

100. The representations described above were reasonably relied on by Plaintiff in retaining Zauhar, paying Zauhar and other acts performed by Plaintiff in reliance thereon.

101. Said reliance by Plaintiff actually and proximately caused Plaintiff damages as set forth more fully above in an amount to be determined at trial.

## COUNT 6
### (False Imprisonment)
### (Attorney Zauhar and Halberg Defense)

102. Plaintiff re-alleges and incorporates by reference paragraphs 1–101 of this Complaint as though fully set forth herein.

103. By and through their actions, including deliberately withdrawing, Defendants intended to unlawfully confine and did unlawfully confine Plaintiff.

104. Plaintiff was at all times conscious of the confinement and did not consent to the confinement.

105. The confinement was not otherwise privileged.

106. On September 3, 2019 the confinement the was reversed and vacated in *Miller v. Fredin*, Case No. 17-CR-3056.

107. As a proximate result of the confinement, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 7
### (Intentional Infliction of Emotional Distress)
### (Attorney Zauhar and Halberg Defense)

33

108.    Plaintiff re-alleges and incorporates by reference paragraphs 1–107 of this Complaint as though fully set forth herein.  Halberg and Attorney Zauhar intentionally acted recklessly, their actions were extreme and outrageous, the conduct caused severe emotional distress.

109.    Between October 17, 2018 and June 12, 2019 Halberg allowed Plaintiff to be falsely imprisoned.

110.    Halberg intentionally deprived Plaintiff access to his family, dying mother, dog, and professional livelihood.

111.    On September 3, 2019 the Ramsey County District Court reversed and vacated all charges in *Miller v. Fredin*, Case No. 17-CR-3056.

112.    Halberg inflicted extreme emotional harm on Plaintiff.

113.    As a proximate result of this intentional infliction of emotional distress, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## COUNT 8
### (Negligent Infliction of Emotional Distress)
### (Attorney Zauhar and Halberg Defense)

114.    Plaintiff re-alleges and incorporates by reference paragraphs 1–113 of this Complaint as though fully set forth herein.

115.    Plaintiff Fredin re-alleges and incorporates by references paragraphs 1-121 of this Complaint as though fully set forth herein.  Halberg could foresee Plaintiff's false imprisonment was wrongful, Defendants placed Plaintiff in a danger zone, and Defendants negligence was the proximate cause of Plaintiff injury.

116.    Between October 17, 2018 and June 12, 2019 Halberg allowed Plaintiff to be falsely imprisoned.

117.    Halberg could foresee that Plaintiff's false imprisonment was wrongful.

34

118. Plaintiff was assaulted on several occasions.

119. On September 3, 2019 the Ramsey County District Court reversed and vacated all charges in *Miller v. Fredin*, Case No. 17-CR-3056.

120. The proximate cause of Halberg's negligent infliction of emotional distress were Halberg's false and malicious actions.

121. As a proximate result of this negligent infliction of emotional distress, Plaintiff suffered harm entitling him to damages in an amount to be determined at trial.

## JURY TRIAL DEMANDED

Plaintiff demands a jury on all issues which may be properly tried by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Fredin prays that the Court:

(a) Enter judgment in favor of Plaintiff against Defendant Attorney Zauhar and Defendant Halberg Defense;

(b) Enter judgment awarding Plaintiff compensatory damages on all counts herein to compensate Plaintiff for Defendant Zauhar and Défendant Halberg Defense activity complained of herein and for any injury complained of herein, inclusive of interest and costs, in an amount to be determined at trial;

(c) Enter judgment awarding punitive, exemplary, enhanced and/or treble damages as allowed by applicable state and federal law in an amount to be determined at trial;

(d) Enter judgment awarding Plaintiff his fees and costs reasonably incurred in this action as allowed by applicable state and federal law; and

(e) Order such other relief that the Court deems just and appropriate.

Dated: December 11, 2019
Hudson, WI

/s/ brock fredin

Brock Fredin
Hudson, WI 54016
(612) 424-5512 (tel.)
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*

36